UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE D. LANG

        Plaintiff,                CIVIL ACTION NO. 05-CV-73473-DT

    vs.                        DISTRICT JUDGE MARIANNE O. BATTANI

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## I.    REPORT AND RECOMMENDATION

This Court recommends that Defendant's Motion for Summary Judgment (Docket # 16) be **DENIED** and Plaintiff's Motion for Summary Judgment and /or Remand (Docket # 13) be **GRANTED**, in part, in that the instant case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Eddie D. Lang filed an application for Disability Insurance Benefits ("DIB") on September 12, 2002. (Tr. 41-43). He alleged he had been disabled since June 28, 2002. *Id.* Plaintiff's claim was initially denied. (Tr. 28-32). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ) on October 15, 2002. (Tr. 33). A hearing took place before ALJ Neil White on January 21, 2005. (Tr. 17-23, 205-11). Plaintiff was

represented by an attorney at the hearing. (Tr. 24). The ALJ denied Plaintiff's claim in a written opinion issued on January 21, 2005. (Tr. 17-23). The Appeals Council denied review of the ALJ's decision on July 30, 2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 5-7); 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

### III. MEDICAL HISTORY

Plaintiff has a history of diabetes and arthritis. (Tr. 161). In June 2000, an MRI of Plaintiff's right knee indicated he had a torn medial meniscus with a possible injury to his anterior cruciate ligament ("ACL"). (TR. 183, 197). Plaintiff reported to Dr. Michael J. Sorscher that his injury caused some instability and pain, especially with any twisting motion. Plaintiff could walk quite well and his knee did not lock but occasionally Plaintiff limped. Dr. Sorscher's examination revealed that Plaintiff walked with a mild antalgic gait and had pain with full extension of his right leg. Dr. Sorscher recommended that Plaintiff undergo arthroscopic surgery, which would require two to six weeks off from work. (Tr. 183, 195). On August 25, 2000, Dr. Sorscher performed arthroscopic surgery on Plaintiff's right knee, which showed that there was a partial tear of Plaintiff's right ACL with some scarring. After the surgery, Dr. Sorscher recommended physical therapy. (Tr. 182, 196).

In October and November 2000 Dr. Sorscher reported that Plaintiff had returned to work but that Plaintiff had reportedly re-injured his knee and had continued knee pain and swelling. Plaintiff also stated that he sometimes wore a knee brace. Dr. Sorscher recommended that Plaintiff take Tylenol and Mortin and treat his knee with ice. He also advised Plaintiff not lift more that 25 pounds for the next two weeks. (Tr. 181).

In February and March 2001 Plaintiff reported worsening pain in his right knee, instability, limping, and swelling. Dr. Sorscher noted tenderness of Plaintiff's knee joint and pain with motion but no instability. Dr. Sorscher prescribed Vioxx and ice treatment and recommended that Plaintiff have another MRI. (Tr. 180). The second MRI showed a possible re-tear of Plaintiff's right ACL and another arthroscopic surgery was recommended. (Tr. 180, 198).

Plaintiff saw Dr. Nathaniel C. Narten, an orthopedic surgeon, in April 2001. Plaintiff reported that he had not been taking his Vioxx as prescribed for his pain. Dr. Narten confirmed that Plaintiff's MRI indicated a possible re-tear and that Plaintiff was a good candidate for repeated arthroscopic surgery. However, Dr. Narten recommended that Plaintiff first undergo physical therapy three to four times a week, take Vioxx, and use a knee support or brace. (Tr. 120-21).

At a follow-up appointment in May 2001, Dr. Narten noted that Plaintiff avoided full extension of his right knee and stood tilted toward the right. Plaintiff also had tenderness in his right knee and walked with a slight limp. Dr. Narton reported that Plaintiff had normal muscle strength with the exception of his right knee extension and a range of motion in his right knee limited to -9 degrees with flexion of 111 degrees. Dr. Narton also noted Plaintiff's reports of pain with an occasional needle-type sensation. (Tr. 104).

Plaintiff subsequently attended 12 physical therapy sessions consisting of moist heat application and progressive therapeutic exercises with instructions on how to perform therapeutic exercises at home. Plaintiff reported to Dr. Narten on June 1, 2001,

that his pain had decreased, his right leg felt stronger, he could perform his daily activities independently, and his endurance for weightbearing and ambulation had increased. Plaintiff still, however, had a slight limp and a decrease in stride length. (Tr. 106, 188). Dr. Narten recommended continued home exercises. *Id.*

Despite his improvements in June 2001, Plaintiff reported continued pain in his right knee so Plaintiff underwent arthroscopic surgery again on July 3, 2001. (Tr. 93-5, 119). Plaintiff reported later that month that his knee felt "great". Although Plaintiff noted a slight limp and soreness, he told Dr. Narten that he did not have the same pain as before. Dr. Narten recommended continued physical therapy and exercise. (Tr. 118). Dr. Narten reported on July 30, 2001 that Plaintiff was not doing his physical therapy as prescribed. The doctor wrote another prescription for the therapy and instructed that Plaintiff not work for three weeks. (Tr. 117).

Dr. Narten again evaluated Plaintiff in August 2001 and Plaintiff reported continued pain. Dr. Narten noted a decreased range of motion and strength in Plaintiff's right knee, improper posture and gait due to his knee injury and mild edema. (Tr. 99-101). In September 2001 Plaintiff reported that he was not sure if he was strong enough to return to work and that pain and stiffness in his right knee continued. Dr. Narten noted that Plaintiff no specific point tenderness and that he did not need the assistance of a walking aid. Home exercise and three weeks of therapy was recommended. (Tr. 97-8, 109-10, 116).

In November 2001, Plaintiff reported soreness and tenderness in his feet, with pain increasing with prolonged ambulation. No treatment was prescribed. (Tr. 137-38).

X-rays were also taken of Plaintiff's right foot to evaluate it for joint deformities. (Tr. 142-43). A report from Plaintiff's physical therapist on November 13, 2001 indicated that Plaintiff had missed some appointments and had shown no improvement. Plaintiff was referred back to his physician for further evaluation. (Tr. 111-12). Reports from July and September 2001 indicate that Plaintiff had undergone physical therapy as prescribed, which may have delayed improvement of Plaintiff's knee injury. (TR. 116-17). Plaintiff's left foot began to feel better in December 2001 but he still had a sore right ankle. (Tr. 136).

Plaintiff reported bilateral knee and foot and ankle pain and in January 2002. Plaintiff received cortisone injections for his feet. (Tr. 134-35, 163). As to Plaintiff's right knee, Dr. Narten noted: (1) some pain but no catching or locking; (2) tenderness in the medial joint line; (3) no significant swelling; (4) intact ligamentous stability; (5) no patellar signs; (6) 30 percent absent medial articular cartilage space; and (7) some early moderate arthritis. Dr. Narten recommended conservative treatment, a knee support, weight loss, and exercise. As to Plaintiff's left knee, Dr. Natren commented that there was mild tenderness and reported occasional pain but no swelling, patellar signs or ligamentous instability. Dr. Narten also noted that X-rays of Plaintiff's left knee were basically normal. (Tr. 114-15). Lastly, Dr. Narten stated that " [t]hey may want to consider light duty for work for him... ." *Id.* Various later medical reports from 2002 reference Plaintiff's continually reported foot pain. The reports also indicate that Plaintiff did not appear to have knee pain in March 2002 with only mild pain in May 2002 (Tr. 127, 131-133, 156-57, 159, 16, 1621). Plaintiff also reported pain in both heels in June

2002, which was later diagnosed as heel spur syndrome and bursitis. Plaintiff reported that heel spur wraps helped with this condition. (Tr. 128, 130, 139-40). Plaintiff also reported that stopped taking his anti-inflammatory medication but occasionally takes Tylenol and glucosamine, which gave him some relief. (Tr. 113).

Dr. Terry Weingarden, a certified orthopedic surgeon, examined Plaintiff on July 16, 2002. (Tr. 122-26). Dr. Weingarden noted that Plaintiff had full range of motion in his feet and ankles as well as a strong dorsi and plantar flexion of the ankles. Plaintiff had some plantar surface pain in his feet and some thickening of his ankles. (Tr. 124). Dr. Weingarden further reported that Plaintiff had flexion of 100 degrees and 0 degrees of extension as to his knees and X-rays showed some narrowing of the medial compartment of both knees. Plaintiff also had mild swelling and bowing of his right knee with pain in that knee's medial and lateral aspect. (Tr. 124-25). Dr. Weingarden ultimately recommended that Plaintiff: (1) could return to work with restrictions of no repetitive flexion of his knees and no ladder climbing; and (2) continue with conservative therapy for his knees. (Tr. 125).

A doctor noted in late August 2002 that Plaintiff reported lower back pain in addition to his previous complaints and the doctor recommended continued strengthening exercises and Tylenol. (Tr. 158). Plaintiff has also begun water aerobic therapy. (Tr. 158-59).

Medical reports from September 2002 indicated Plaintiff was feeling better and had slight pain in his knees with movement but no knee tenderness. Plaintiff was advised to return to light work if possible. (Tr. 157). A medical consultant reviewed

Plaintiff's case on September 30, 2002 and concluded that Plaintiff: (1) could lift/carry up to 10 pounds; (2) stand/walk for up to 2 hours in an 8-hour workday; (3) sit for up to 6 hours in an 8-hour workday; (4) was limited in his ability to perform pushing/pulling with his lower extremities; and (5) could occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 149-50). The consultant also recommended that Plaintiff avoid moderate exposure to hazards such as machinery and heights. *Id.* Medical reports from October 2002 indicate Plaintiff was not taking his prescribed medication every day. (Tr. 156).

Doctor notes from 2003 indicate that Plaintiff was not taking his blood pressure medicine as prescribed. (Tr. 202). Doctor reports from 2004 discuss Plaintiff's hypertension, high blood pressure, arthritis and continued knee pain with no remarkable change in Plaintiff's condition or treatment. (Tr. 199-204).

### IV.   HEARING TESTIMONY

#### A.   Plaintiff's Testimony

Plaintiff testified at the October 13, 2004 hearing. (Tr. 207-20). Plaintiff stated that he was born in July 1961 and that he had graduated from high school. (Tr. 208). He testified that he had stopped work on June 28, 2002 due to pain in his ankles and knees. (Tr. 209-10). Plaintiff also told the ALJ that he has right knee pain that may require a future knee replacement with lesser left knee pain, painful ankles, foot problems, arthritis and high blood pressure. (Tr. 210-13, 215). Plaintiff further testified that for his impairments he: (1) takes medication which makes him dizzy and drowsy especially in the morning; (2) elevates and applies ice to his knees for about 4 hours out of an 8 hour day; (3) uses a cane three

to four times a week to help him balance when he walks; and (4) wears orthotics on both ankles although they do not prevent the pain and swelling. (Tr. 210-16). Plaintiff also told the ALJ that due to his impairments he cannot: (1) climb stairs without pain; (2) sit for more than 45 minutes; (3) stand for more than 15 to 30 minutes at one time; (4) walk for more than 30 to 40 minutes; (5) lift more than 15 to 20 pounds and has difficulty lifting things because of his balance. (Tr. 209, 21-14). Plaintiff further stated that he would not attempt to squat down because he would fall over.

When asked about daily activities, Plaintiff remarked that he grocery shops when he is able and does housework but that he does not belong to any social clubs or organizations and does not drive because he cannot operate the foot pedals properly. (Tr. 211, 216). Plaintiff also indicated that he sometimes has difficulty sleeping due to his aches and pains and that he naps for 30 to 45 minutes a day. (Tr. 211).

The ALJ also inquired as to whether any medical documents existed for 2003 through the date of the hearing. Plaintiff's counsel indicated that such documents had been subpoenaed but not received. The ALJ consequently left the record open for 30 more days so that additional medical evidence could be submitted by Plaintiff. (Tr. 216-19).

### B.   The Vocational Expert's Testimony

Stephanee Leech testified as a vocational expert. (Tr. 34-36, 92, 220). Ms. Leech testified that Plaintiff's prior work as a janitor involved medium, semi-skilled work and Plaintiff's work as a bus driver involved heavy, semi-skilled work. (Tr. 220). Ms. Leech further stated that Plaintiff's driving skills were transferrable. (Tr. 220).

### V.   THE ALJ'S FINDINGS

The ALJ found that Plaintiff met the disability insured status requirements and had not engaged in substantial gainful activity since June 28, 2002. He further determined that Plaintiff suffers from diabetes, hypertension and status post internal derangement of the right knee, which are severe, but that Plaintiff's impairments do not met or medically equal one of the listed impairments. The ALJ additionally found that Plaintiff's allegations regarding his limitations were not consistent with the medical record. The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of sedentary work. The ALJ ultimately concluded that Plaintiff's RFC precluded him from performing his past relevant work but that Plaintiff was not disabled under the Medical-Vocational Rule 201.28 given Plaintiff's RFC, age, education and work experience. (Tr. 22).

## VI.  STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## VII.   LAW AND ANALYSIS

### A.   Framework for Social Security Disability Determinations

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)   he was not presently engaged in substantial gainful employment; and

(2)   he suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.

### B. Analysis

At Step 5, the ALJ found Plaintiff functionally capable of performing the full range of sedentary work, see 20 C.F.R. § 416.967(a), and then relied exclusively on the pertinent medical-vocational guideline ("Grid"), 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.28, which directed a determination of nondisability.[1]

Plaintiff challenges this determination by arguing that he has nonexertional limitations, consisting primarily of his limited ability to crawl, climb, kneel, crouch, stoop, and work around hazards such as machinery and heights. As such, Plaintiff argues the ALJ erroneously relied exclusively upon the Grid to make a nondisability finding. In support of his argument, Plaintiff relies upon his own testimony, the September 2002 report of a non-examining state agency physician and the July 2002 report of a examining, but non-treating physician, Dr. Weingarden.

According to the ALJ's written opinion, the ALJ found Plaintiff's claims regarding his alleged impairments to be unsupported by the evidence. (Tr. 18, 20, 22). The ALJ also indicated that he gave little weight to the non-examining state agency physician's opinion because it, too, was unsupported by the record as a whole. (Tr. 21). Plaintiff has not presented any legal or factual challenges to these determinations. Any issue not raised

---

[1] Under Rule 201.28, a claimant (1) aged 18 to 44, (2) with a high school education or more, (3) with skilled or semiskilled work experience and (4) with the residual functional capacity for sedentary work, is not disabled. "Where a claimant's qualifications correspond to the job requirements identified by a [vocational] rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952, 1955, 76 L.Ed.2d 66 (1983).

directly by Plaintiff is deemed waived, pursuant to *U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). *See also Young v. Secretary of Health & Human Services,* 925 Fed. 2d 146 (6th Cir. 1990). Nevertheless, the ALJ's findings are substantially supported by record. None of Plaintiff's treating physicians found Plaintiff totally disabled or permanently limited from work in the ways suggested by Plaintiff, the non-examining state agency consultant or Dr. Weingarden. Furthermore, Plaintiff's treating physicians prescribed conservative treatment such as medication, physical therapy and exercise, which improved Plaintiff's condition even though Plaintiff failed to always follow his treatment plan. There was only one medical report from 2003, which indicated Plaintiff was not taking his blood pressure medication, and only limited medical records indicating treatment by Plaintiff in 2004. (Tr. 199-204).)

The issue of Dr. Weingarden's report is more problematic. The record is unclear as to what weight the ALJ afforded the opinion of Dr. Weingarden that Plaintiff could return to work but only if permanent restrictions against repetitive flexion of the knees and no ladder climbing were imposed. The ALJ summarized Dr. Weingarden's July 2002 report and commented upon his recommended limitations when rejecting Plaintiff's claim of total disability. (Tr. 19). In the next sentence, however, the ALJ found Plaintiff could perform the full range of sedentary work. The record suggests, therefore, that ALJ implicitly rejected Dr. Weingarden's opinion regarding Plaintiff's nonexertional limitations. *Id.* However, an implicit rejection of such views by an examining doctor is not sufficient. *See*

*Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). Accordingly, the Court concludes that this case must be returned to the ALJ for further proceedings.[2]

## VIII. CONCLUSION

The Court recommends that Defendant's Motion for Summary Judgment be **DENIED.**

The Court also recommends that Plaintiff's Motion of Summary Judgment/Remand be **GRANTED IN PART** in that the case be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)[3] for the Commissioner to: (1) address the opinion of Dr. Weingarden regarding Plaintiff's alleged nonexertional limitations; (2) if necessary, re-evaluate Plaintiff's RFC to perform the full range of sedentary work; and (3) conduct a new step five analysis if otherwise appropriate.

## IX. NOTICE TO PARTIES

---

[2] Defendant suggests that this Court can assume that the ALJ's sole reliance upon the Grid was proper because we can assume the ALJ would have found that the nonexertional limitations suggested by Dr. Weingarden did not significantly erode Plaintiff's occupational base as noted in Social Security Rulings 83-10, 83-14, 83-15 and 96-9p. While it is possible that the ALJ may ultimately determine that sole reliance upon the Grid to direct a finding of nondisability is appropriate regardless of Dr. Weingarden's opinion, the Court is not inclined to assume as much.

[3] "[S]entence four of § 405(g) contemplates the type of remand involved in the present case-a remand after a final decision by the district court reversing the denial of benefits by the Secretary in order to correct an error by the Secretary in applying the regulations even if the rehearing to correct the error requires the taking of additional evidence. *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990) (sentence four provides appropriate relief when evidence on record is insufficient to support the Secretary's conclusions and further factfinding is necessary)." *Faucher v. Sec. of Health and Human Services*, 17 F.3d 171, 174 (6th Cir.1994)

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 4, 2006      s/ Mona K. Majzoub
                                                               **MONA K. MAJZOUB**
                                                               **UNITED STATES MAGISTRATE JUDGE**

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 4, 2006          s/ Lisa C. Bartlett
                                            Courtroom Deputy